# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 09-3007-CV-S-RED |
| | ) | |
| SCOTT A. JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Scott A. Johnson's Motion for Acquittal Notwithstanding the Verdict and/or Motion for a New Trial with Suggestions in Support Thereof (Doc. 93). On December 16, 2009, a jury convicted Mr. Johnson of eight counts of attempted sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (e). § 2251(a) criminalizes persuading a "minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." A first time offender convicted under § 2251(a) faces a statutory minimum of fifteen years in prison. § 2251(e).

This case presents a difficult question in that there is no doubt that Mr. Johnson committed a terrible wrong, for which he would be guilty under applicable state law. However, there is serious doubt as to whether he committed the specific federal crime charged by the Federal Government in this case. Mr. Johnson was a weightlifting coach at St. John's Healthtracks, a specialized facility for young athletes. On several occasions, Mr. Johnson told female athletes to go into an examination room, disrobe completely, and weigh themselves. What the females did not know was that Mr. Johnson had set up a hidden video camera to film this weigh-in procedure. At least two of the female athletes were minors at the time they were filmed. Mr. Johnson unmistakably committed an

appalling act when he took advantage of the trust of these females and invaded their privacy. Although this Court believes Mr. Johnson's conduct should not go unpunished, the Court finds § 2251(a) was not intended to apply to Mr. Johnson's conduct. After long and careful consideration, the Court **GRANTS** Defendant's Motion for Acquittal Notwithstanding the Verdict (Doc. 93) due to insufficient evidence.[1] There are other lesser criminal charges for which he is certainly guilty. This order is simply stating that the facts of this case will not support a conviction under this particular statute.

**BACKGROUND**

Sometime between 2005 and 2006, Mr. Johnson began telling female athletes (both adult and minor) to completely undress and weigh themselves in a room in which he had placed a video camera. Mr. Johnson's conduct came to light in October of 2008 when a fellow St. John's employee noticed a video camera on Mr. Johnson's desk. This set off a chain of events leading to Mr. Johnson's termination and a criminal investigation. Mr. Johnson admitted to investigators that he filmed the girls without their knowledge because he "just wanted to film them . . . [and] see them naked."

A search of Mr. Johnson's home did not turn up any evidence other than the videotapes. No depictions of child pornography were found on Mr. Johnson's computer. The officers found no child pornography videos or magazines in Mr. Johnson's residence. There was no evidence Mr. Johnson surfed the internet looking for child pornography. Mr. Johnson had not uploaded any of his videos to the internet. There was no evidence that Mr. Johnson had tried to enhance the videos

---

[1]Because the Court grants the Motion for Acquittal Notwithstanding the Verdict based on insufficient evidence, the Court does not reach the legal impossibility, Government misconduct, or exclusion of expert testimony issues.

by freeze framing any of the images. The investigation culminated in a grand jury indictment charging Mr. Johnson with ten counts of sexual exploitation of a minor. The Government voluntarily dismissed two of the ten counts.

The videos pertaining to the remaining eight counts may be described as follows. Common to all videos is the location of the camera and an examination table. The camera is always placed between two shelves that limit its vertical view, but provide cover for the "hidden camera." Each video shows an examination table on the right side of the frame. The scale is always placed to the table's left, somewhere in the camera's view. The counts and their corresponding video exhibits are discussed below in date order.

    1.    COUNT 8 (GOVERNMENT EXHIBIT ("GOV. EX.") 25) - K.P. approximately 2005

The scale directly faces the camera. The minor weighs herself three times: once fully clothed, once wearing a bra and underwear, and once only wearing underwear. The video shows the minor from her shoulders to her calves.

    2.    COUNT 1 (GOV. EX. 18) - K.P. approximately 2006

The scale faces the table, such that when a person stands on it, a side view is captured. The minor enters the room, undresses completely, weighs herself, and redresses. The view of the minor's pubic region is shaded. To the extent that region is shown, it is on the left side of the frame. The video shows the minor from just below her shoulders to her calves.

    3.    COUNT 3 (GOV. EX. 20) - K.P. approximately 2006

The scale faces the wall opposite the camera, such that the camera captures a rear view of the person standing on the scale. The camera's zoom appears to be increased. When the minor weighs herself naked, the frame shows from her left buttocks to just below her knee. No frontal

3

view is captured.

        4.        COUNT 4 (GOV. EX. 21) - K.P. approximately 2006

The scale faces the wall opposite the camera. The camera's zoom is enhanced and the minor's body is closer to the camera. When the minor weighs herself naked, the frame shows from the middle of her back to her calves. Only a side view is obtained while the minor is completely naked. She faces the camera momentarily after putting on her underwear.

        5.        COUNT 2 (GOV. EX. 19) - K.P. approximately 2007

The scale faces the table. The minor disrobes outside of the camera's view. The minor weighs herself naked, giving the camera a side view from just above her breasts to her calves. The video does not clearly show the minor's pubic area and captures no frontal nudity.

        6.        COUNT 5 (GOV. EX. 22) - M.S. approximately 2007

The scale faces the table. The camera's zoom has been enhanced to a similar degree as the Count 4 video. The video shows no nudity, only a female in red workout shorts.

        7.        COUNT 6 (GOV. EX. 23) - K.P. approximately 2007

The scale faces the table. The frame shows the nude minor from just above her breasts to her calves. The minor redresses mostly outside of the camera's view. A brief view of the minor's pubic area is shown on the far left side of the frame.

        8.        COUNT 7 (GOV. EX. 24) - K.P. approximately 2007

The scale faces the wall opposite the video camera. The minor does not completely undress. The minor never takes off her thong or her sports bra. The frame is a side view and shows the minor from her upper back to her calves. No frontal view is captured other than when she walks out with her shorts and shirt on.

The minors depicted in the videos, M.S. and K.P., testified at trial. The minors stated that on the occasional Saturday Mr. Johnson would tell them to go into a room, undress completely, and weigh themselves. M.S. testified she was 15 to 16 years old when the video pertaining to Count 5 was filmed. K.P. testified she was 16 years old when the video for Count 8 was filmed. She testified she was 16 to 17 when the videos related to Counts 1, 3, and 4 were filmed. She stated when the videos pertaining to Counts 2, 6, and 7 were filmed, she was 17. K.P. testified she still competed in weightlifting and during competitions it was "standard protocol to either weigh in in a singlet or in the nude to make it fair."

At the close of the Government's case, this Court granted Mr. Johnson's oral motion for an acquittal to the extent the charges were based on <u>actual</u> rather than <u>attempted</u> sexual exploitation of a minor. The crime charged is specifically limited to a video depiction of a "lascivious exhibition of the <u>genitals or pubic area</u>. . ." § 2251(a); § 2256(2)(A) (emphasis added). Some of the videos did not depict either of these, some were too dark or blurred to tell anything and the remainder, at best, only depicted mere nudity. Regardless of all the Government argument about Mr. Johnson's intent and what he attempted to gain, it is clear from the end product - the videos - that he failed to <u>actually</u> produce a visual depiction of a "lascivious exhibition of the [minors'] genitals or pubic area." At the close of all evidence, Mr. Johnson again moved for an acquittal on the remaining counts. This Court denied Mr. Johnson's motion and submitted eight counts of <u>attempted</u> sexual exploitation of a minor to the jury. On December 16, 2009, the jury returned a verdict of guilty on all counts. Mr. Johnson filed the instant Motion on January 15, 2010.

## ANALYSIS

The criminal statute under which Mr. Johnson was charged, 18 U.S.C. § 2251(a), in pertinent

part provides, "Any person who . . . persuades . . . any minor to <u>engage in</u> . . . any <u>sexually explicit conduct</u> for the purpose of producing any <u>visual depiction of such conduct</u> . . . shall be punished . . ." (Emphasis added). 18 U.S.C. § 2256(2)(A) defines "<u>sexually explicit conduct</u>" as "<u>actual or simulated</u> -

   (i) sexual intercourse. . .;

   (ii) bestiality;

   (iii) masturbation;

   (iv) sadistic or masochistic abuse; or

   (v) <u>lascivious exhibition of the genitals or pubic area of any person</u>;" (emphasis added).

A review of Mr. Johnson's conduct makes it clear he did not attempt to persuade the minor females to engage in items (i) - (iv), i.e. actual or simulated sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. The only persuasion that occurred is that Mr. Johnson persuaded the females (both minor and adult) to take off all their clothes and weigh themselves on a scale in a room in which he had placed a hidden video camera. The females were in an organized weightlifting program, Mr. Johnson was their coach, and it was undisputed that weighing in the nude was a common practice with weight lifters. From the viewpoint of the minor females they were not asked to do anything unusual and, but for later learning that they had been videotaped, they had no reason to be upset or damaged by their own conduct. This is in stark contrast to the first four examples of "sexually explicit conduct," all of which would be expected to leave lasting mental issues with the minor regardless of whether the minor ever learned of the videotaping. The fifth category in the definition of sexually explicit conduct i.e. actual or simulated "lascivious exhibition of the genitals or pubic area" is not as easy to define as the first four, but

common sense and rules of statutory construction tell us that it must be considered to be conduct of a similar magnitude. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) (opining, "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute"). The American Heritage Dictionary defines "lascivious" as "of or characterized by lust, lewd, lecherous." Therefore, it is not surprising that courts have universally held that mere nudity is not included in the category of "lascivious exhibition of the genitals or pubic area."

The Court now turns to whether Mr. Johnson attempted to persuade K.P. and M.S. to engage in an actual or simulated lascivious exhibition of their genitals or pubic area for the purpose of producing a video that would depict such a lascivious exhibition or if Mr. Johnson simply tried to persuade the girls to engage in mere nudity for the purpose of producing a video that would depict their nudity. As repulsive as it may seem to the general public, it is only the former which is a crime under the charge before this Court. Some courts have concluded that a defendant can be guilty of sexual exploitation under § 2251 by manipulating the video in a way to cause an otherwise non-offensive depiction to be viewed as a lascivious exhibition of the victim's genitals or pubic area. Examples have been use of the camera's zoom lens to show close up views of the pubic area or freeze framing the video to emphasize the pubic area in an obviously sexual manner. There is no evidence of this type of manipulation in this case.

An attempt requires "an intent to engage in criminal conduct," and "conduct constituting a 'substantial step' toward the commission of the substantive offense which strongly corroborates the actor's criminal intent." *United States v. Lucas*, 499 F.3d 769, 781 (8th Cir. 2007). As applied to this case, the Government must have offered proof from which a jury could find beyond a reasonable

7

doubt that Mr. Johnson 1) specifically intended to persuade the minors to engage in a lascivious exhibition of their genitals or pubic area, and 2) undertook a substantial step in accordance with a design to persuade a minor to engage in a lascivious exhibition for the purpose of producing a visual depiction of the lascivious exhibition. *See United States v. Mims*, 812 F.2d 1068, 1077 (8th Cir. 1987); *United States v. Kenyon*, 481 F.3d 1054, 1069 (8th Cir. 2007). "A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *Mims*, 812 F.2d at 1077.

Courts consider a non-exhaustive list of factors in determining whether a depiction meets the category of "lascivious exhibition of the genitals or pubic area." The factors include: 1) whether the focal point is on the minor's genitals or pubic area; 2) whether the picture's setting is sexually suggestive, i.e. in a place associated with sexual activity; 3) whether considering the minor's age, the minor is depicted in an unnatural pose or in inappropriate attire; 4) whether the minor is fully or partially clothed, or nude; 5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the picture is intended or designed to elicit a sexual response in the viewer; and 7) whether the picture depicts the minor as a sexual object. *United States v. Wallenfang*, 568 F.3d 649, 657, 660 (8th Cir. 2009) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)). In adopting these factors, the United States Court of Appeals for the Eighth Circuit indicated they were not exhaustive and the inquiry should always be case-specific. *Id*. at 657-58.

In *United States v. Rivera*, the United States Court of Appeals for the Second Circuit analyzed the *Dost* factors. 546 F.3d 245, 250 (2d. Cir. 2008). The Second Circuit opined,

> Although the *Dost* factors are not definitional, they are useful for assessing the sufficiency of evidence and pose questions that are (at least) germane to the issue of lasciviousness.

> Here, all four photographs arguably satisfy several *Dost* factors: a bed is "generally associated with sexual activity," *Dost*, 636 F. Supp. at 832, and so is the pose, lying down with legs spread; the subject is naked; one photo, in which the subject's head is turned to an unseen observer (the photographer) suggests sexual encounter; and the genital area is the focal point. Finally, these images have context that reinforce the lascivious impression. David testified that [Defendant] Rivera arranged the poses and took the photographs. Rivera was responsible for the *mise-en-scène*. A reasonable jury could therefore find that Rivera composed the images in order to elicit a sexual response in a viewer-himself. These images are unquestionably "lascivious" material, the production of which Congress intended to criminalize.

*Id. Rivera* is useful not only for its discussion of the *Dost* factors, but also as an example of the type of conduct that has been considered to be "sexually explicit conduct" under § 2251.

Mr. Johnson was convicted of attempting to produce a video of sexually explicit conduct. The question was whether Mr. Johnson took steps to set up a situation in which he could reasonably expect to get a video of sexually explicit conduct. In other words, would it be reasonable for Mr. Johnson to believe a minor female following his directions and requested activity would under any reasonable scenario end up engaging in sexually explicit conduct, i.e. a lascivious exhibition of her genitals or pubic area? Mr. Johnson's conduct consisted of asking the minor females to take off all their clothes and weigh themselves on a scale that was located in a small exam room. Based on Mr. Johnson's instructions, it is clear this situation would never be expected to result in a lascivious exhibition resulting from the knowing conduct of the minor females. The minors were told to take off their clothes and weigh themselves. That was all. The videos confirm they complied with the request. These minors were obviously not persuaded to make any type of exhibition, much less a lascivious exhibition of their genitals or pubic area. This case, therefore, must be viewed in the context of whether Mr. Johnson was able to manipulate the setting, the camera, or the resulting video tape in such a way as to create a lascivious exhibition of the minors' genitals or pubic area when the minors' own conduct was clearly limited to a brief period of mere nudity. As applied to this case,

9

the *Dost* factors confirm there was insufficient evidence to find Mr. Johnson attempted to persuade the minors to engage in a lascivious exhibition of their genitals or pubic area so he could produce a video depiction of such conduct.

1.  FOCAL POINT

Considered in the context of the aggravated sexual nature of the conduct described in the statute, it seems the minor's genitals or pubic area would have to dominate the depiction; for example, a true zoom magnification. In other words, it would have to be of such clever manipulation that it would change mere nudity into a lascivious exhibition. An example of this was the subject of the opinion in *United States v. Horn*, 187 F.3d 781 (8th Cir. 1999), wherein the Eighth Circuit found that a "lascivious exhibition" of what otherwise could be argued to not meet any *Dost* factor was created by the defendant freeze framing portions of the videotape such that the pubic areas of the young girls were most exposed, were at the center of each image, and formed the focus of the depiction. *Id*. at 789.

There was no evidence in this case of freeze framing nor was there evidence that zoom enhancement made the minors' genitals or pubic area the focus of the depiction. The majority of the videos show the minors from their shoulders to just below their knees. It appears each video excluded the minor's head and feet because of the camera's placement. The camera was hidden between two shelves. There were some built in limits to the camera's vertical field of view because of the shelf located above and the shelf below on which the camera was sitting. Even assuming the zoom of the camera lens, rather than the vertical limitation in the field of view, was the reason three of the videos (only three of the eight videos appeared to have any zoom magnification) did not show the minor's head or feet, it is still a stretch to say that in a video showing a nude female from her

lower back to just below her knees the focal point is the minor's pubic area, particularly when it was only in the first of the seven K.P. videos that Mr. Johnson had placed the scale so the minor would face the camera and that was not a time when the camera's zoom was enhanced.

In the three videos in which the zoom has some enhancement the scale was not located in a position that would cause the victim to face the camera. Rather, the scale either faced the wall opposite the camera or the table. It is also significant that the date order of the videos does not reflect a fine tuning by Mr. Johnson to focus in on the pubic area as time went on. There was no indication that he was perfecting or attempting to perfect the camera's zoom, the camera's placement, and/or the scale's placement to make the minors' pubic area the focal point of the video. The videos in which the zoom appears to be enhanced are not the last three videos made from a date order consideration. The only time the scale faced the camera was the very first video. Likewise, there was no evidence that Mr. Johnson made any attempt to "fine tune" his directions to the minor females in order to get something more than mere nudity. He did not have the ability to zoom the lens while the minor was in the room. In sum, there is no doubt that Mr. Johnson was attempting to capture an image of the girls in the nude, but there is insufficient evidence to support the claim that he was attempting to make the genitals or pubic area the focal point as that term has been described in the case law on this point.

  2.  SEXUALLY SUGGESTIVE SETTING

In this case, there was no bed to suggest sexual activity, as in *Rivera*. A weigh-in on a scale in an exam room is not sexually suggestive.

  3.  UNNATURAL POSE OR INAPPROPRIATE ATTIRE

The minors are not depicted in a pose to suggest a sexual encounter, unlike the minor in

11

*Rivera*. Mr. Johnson never told them to pose in a certain way or to wear certain suggestive clothing. There was no "pose" in any video. The minors took off their clothes, weighed, got dressed and left the room.

4. NUDITY

Nudity is present in several depictions and it is undisputed that Mr. Johnson attempted to obtain nudity by telling the minors to take off all their clothes. However, as discussed above, courts have repeatedly held that mere nudity is not sufficient to fit in the lascivious exhibition category.

5. WILLINGNESS TO ENGAGE IN SEXUAL ACTIVITY

No evidence indicated Mr. Johnson attempted to persuade the minors into showing a willingness to engage in sexual activity while in the examination room. Mr. Johnson, for obvious reasons, never asked the minors to give the camera a certain look. He had no control over the camera while the minors were in the room so he was unable to manipulate the visual depiction to try to create a fantasy willingness.

6. SEXUAL RESPONSE IN THE VIEWER

In discussing this factor, the Eighth Circuit opined the issue is whether the images "appear to be of a sexual character . . . it is the duty of the trier of fact in this kind of case to examine the pictures to determine whether they are designed to appeal to the sexual appetite, as for instance, by exhibiting a sexual coyness or in focusing on the pubic area of the subject in a way that is lewd or lurid." *Kemmerling*, 285 F.3d at 646. It is undisputed that at best (from the Government's viewpoint) these videos depict two minor girls taking off their clothes, stepping on a scale, getting off the scale, dressing, and leaving the room. In terms of Mr. Johnson's desire or intent, the minors

12

did exactly what he was attempting to get them to do. These videos could not be considered to have been intended to elicit a sexual response in the viewer any more than mere nudity would, which several courts have concluded is not "of a sexual character." We do have some limited context similar to *Rivera* in that Mr. Johnson set up a camera and a scale, but that context indicates nothing more than an attempt to capture mere nudity and is very different than a person, as in *Rivera*, telling a minor to undress, lay on a bed, and open his legs for a nude photo. Mr. Johnson did not attempt to gain a depiction that was "lewd or lurid."

    7.      SEXUAL OBJECT

The Eighth Circuit in *Wallenfang* concluded that a minor was portrayed as a sexual object because the photographs were "primarily sexual in subject" and were placed "on a website primarily devoted to sexual images." *Wallenfang*, 568 F.3d at 660. There was no evidence in this case that Mr. Johnson attempted to portray the minors as sexual objects. No evidence indicated Mr. Johnson placed the videos on a website much less "on a website primarily devoted to sexual images." In fact, there was no evidence Mr. Johnson allowed the videos to be seen by anyone other than himself. Mr. Johnson also did not attempt to create videos primarily sexual in subject.

    8.      COMPARISON TO VIDEO VOYEURISM

The Government states that Mr. Johnson's activities have been labeled by Congress as a sex offense as part of its argument that Mr. Johnson was attempting to video more than mere nudity. This statement is based on a reference by analogy to 18 U.S.C. § 1801, the crime of Video Voyeurism, which is described in 42 U.S.C. § 16911(f) as a sex offense. This analogy is misguided as used by the Government, but useful to illustrate that Congress was fully aware of the terms it used in these statutes and more importantly, that Congress did not intend for this type of conduct i.e.

13

voyeurism to be charged under § 2251 as sexual exploitation.

> Video Voyeurism as defined in 18 U.S.C. § 1801 provides in pertinent part:
>
> Whoever . . . has the intent to capture an image of a private area of any individual without their consent, and knowingly does so under circumstances in which the individual has a reasonable expectation of privacy, shall be [punished] . . .

The Government states and this Court agrees that Mr. Johnson is clearly guilty of video voyeurism as defined by this statute. The problem is Mr. Johnson could not be charged under this federal statute because its application is limited geographically to activities that occur in "the special maritime and territorial jurisdiction of the United States," e.g. national parks and Federal buildings. It is significant to note that the words used by Congress to describe the voyeurism offense are much milder and broader than the words used to describe the offense under which Mr. Johnson was charged. In summary, Mr. Johnson's charge (18 U.S.C. § 2251(a)) uses aggravated terms such as "sexually explicit conduct" defined in § 2256(2)(A) as "actual or simulated (i) sexual intercourse . . .; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) <u>lascivious exhibition</u> of the genitals or pubic area of any person." (Emphasis added). Video Voyeurism (18 U.S.C. § 1801) uses much broader, non-aggravated terms, i.e. "private area of an individual," which is further defined as "naked or undergarment clad genitals, pubic area, buttocks, or female breast." Videotaping of nudity as done by Mr. Johnson would clearly be a violation of the video voyeurism statute. It is quite clear to this Court that Congress intended for violations of § 2251(a) to involve a far more aggravated set of circumstances - just as the language used would imply - than violations under the much milder and broader choice of words used to describe video voyeurism. This distinction is explicitly reflected in the vastly different punishments provided for the crimes. Sexual

exploitation of children (§ 2251) carries a fifteen (15) year <u>minimum</u> sentence. Video Voyeurism (§ 1801) carries a one (1) year <u>maximum</u> sentence.

Another distinguishing factor in these two crimes is that in the more serious § 2251 crime, the minor victim is persuaded to engage in sexually explicit conduct which is specifically described as sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area. In the lesser offense, § 1801 (Voyeurism), there is no persuasion of the victim. The perpetrator simply takes the victim's picture at a time when the victim is nude and has an expectation of privacy. It seems clear to this Court that Mr. Johnson's conduct including a broad inference to what could be his attempted conduct could never be expected to meet the aggravated requirements for a § 2251(a) violation, but clearly would be a violation of § 1801 or similar state invasion of privacy laws.

The Government argued that Mr. Johnson's activities were comparable to cases where hidden cameras were placed in restrooms, dressing rooms, school locker rooms, and tanning salons, and further claimed such activities would all be in violation of the more aggravated § 2251. This, however, was not the intent of Congress as revealed in the legislative history for Video Voyeurism, § 1801. House Report No. 108-504 dated May 20, 2004 states in pertinent part as follows under the section titled "Background and Need for the Legislation":

> The issue of "video voyeurism" is becoming a greater privacy concern. The development of small, concealed cameras and cell phone cameras, along with the instantaneous distribution capabilities of the Internet, have combined to create a <u>threat to the privacy of unsuspecting adults, high school students, and children</u>. . . While more states have enacted laws in recent years, there are still great gaps in privacy protection. . . Assisted by this miniaturized technology, voyeurs have found their way to <u>high school locker rooms, department store dressing rooms, and even homes</u>. . . Although many states since have passed laws to target video voyeurism to protect those in a private area out of public view (including restrooms, locker rooms, and private dwellings), there are fewer protections for individuals who may be photographed in compromising positions in public places. H.R.

REP. NO. 108-504, at 2-3 (2004), *reprinted in* 2004 U.S.C.C.A.N. 3292 (emphasis added). It appears clear that Congress intended § 1801 to apply to the very conduct carried out by Mr. Johnson in this case and, further, considered it to be applicable regardless of whether the victims were "adults . . . high school students . . . [or] children." One must conclude that Congress was well aware of the crimes intended to be covered by § 2251 when it enacted § 1801 to cover a perceived gap i.e. that perpetrators who filmed nude women in federal public places where they could expect privacy could not be charged under state law (because the act occurred on Federal property) and could not be charged under § 2251 (because of no persuasion to engage in sexually explicit conduct). Congress limited the application of § 1801 to Federal property based on its recognition that states have passed laws to target video voyeurism. It makes no sense in light of this specific legislative history to conclude that Congress intended that if a perpetrator such as Mr. Johnson committed voyeurism on Federal property he would be charged under § 1801 and face a one (1) year maximum sentence, but if the same offense was committed outside of Federal property Congress intended for it to be charged under § 2251 for which the perpetrator would face a fifteen (15) year minimum sentence. These are clearly two vastly different crimes. This Court has reviewed the evidence in this case from every angle as discussed above and finds that any way you cut it the wrongdoing is video voyeurism and not an attempted persuasion of these minors to engage in sexually explicit conduct so it could be captured on video.

**CONCLUSION**

This order is not intended to condone Mr. Johnson's conduct nor to give him a clean slate. He has certainly invaded the privacy of all his victims and violated other laws that were not charged in this case. § 2251 carries a fifteen year minimum sentence. It is a very serious criminal charge

16

as it should be for any adult who persuades a minor to engage in sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of their genitals or pubic area. It is the extremely aggravated nature of the first four categories that sets the stage for our interpretation of the type of conduct that would meet the fifth category of <u>lascivious</u> exhibition of the genitals or pubic area. It is important to note that the statute requires a "lascivious exhibition," and not a mere "exhibition." Thus, the statute requires something more than persuading the minors to simply take off their clothes such that their genitals or pubic area may be seen as part of their overall nudity. All things considered it appears clear that Mr. Johnson is guilty of Video Voyeurism as defined by federal law (§ 1801), and of state invasion of privacy laws covering voyeurism. However, as reprehensible as Mr. Johnson's conduct was, it simply did not constitute an actual or attempted violation of the only crime with which he was charged, i.e. sexual exploitation of children (§ 2251). Therefore, as to the specific charge on which this case was tried, I conclude that the Government's evidence was insufficient to support the charge. I therefore grant Mr. Johnson's motion for an acquittal.

**IT IS SO ORDERED.**

DATED:   June 11, 2010                             */s/ Richard E. Dorr*
                                                    RICHARD E. DORR, JUDGE
                                                    UNITED STATES DISTRICT COURT